IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

APR 14 2015

CLERK, U.S. DISTRICT COURT
By _____
Deputy

FRANCISCO MARTINEZ, 01185238,　　　)
       Petitioner,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　　No. 3:14-CV-1357-N
　　　　　　　　　　　　　　　　　　　)
WILLIAM STEPHENS, Director, TDCJ-CID,　)
       Respondent.　　　　　　　　　　　)

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and a standing order of reference from the district court.  The Findings, Conclusions and

Recommendation of the Magistrate Judge are as follows:

## I.  Parties

Petitioner is an inmate in the Texas Department of Criminal Justice, Criminal Institutions

Division (TDCJ-CID).  He brings this petition for habeas corpus relief pursuant to 28 U.S.C. §

2254.  Respondent William Stephens is Director of TDCJ-CID.

## II.  Background

On August 6, 2003, Petitioner was convicted of aggravated sexual assault and was

sentenced to life in prison.  *State of Texas v. Francisco Martinez*, No. F-0272304-UM (194th Jud.

Dist. Ct., Dallas County, Tex., Aug. 6, 2003).  On October 25, 2004, Petitioner's conviction and

sentence were affirmed on direct appeal.  *Martinez v. State*, No. 05-03-01243-CR (Tex. App. –

Dallas, 2004).  Petitioner did not file a petition for discretionary review.

On November 26, 2007, Petitioner filed a state habeas petition.  *Ex parte Martinez*, No.

70,849-01.  On November 19, 2008, the Texas Court of Criminal Appeals denied the petition without written order on the findings of the trial court.

On April 9, 2014, Petitioner filed this federal petition for habeas relief.  Petitioner argues:

(1)     He is actually innocent;

(2)     He was denied access to counsel during questioning and his written statement was involuntary;

(3)     The evidence is insufficient to prove penetration;

(4)     The prosecutor made improper closing arguments; and

(5)     He received ineffective assistance of counsel.

On August 19, 2014, Respondent filed his answer arguing, *inter alia*, that the petition is barred by limitations.  On January 20, 2015, Petitioner filed a reply.  The Court now finds the petition should be dismissed as time-barred.

**III.  Discussion**

**A.      Statute of Limitations**

Petitioner filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Therefore, the AEDPA governs the present petition.  *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2068 (1997). The AEDPA establishes a one-year statute of limitations for federal habeas proceedings.  *See* Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (1996).

In most cases, the limitations period begins to run when the judgment becomes final after

direct appeal or the time for seeking such review has expired.  28 U.S.C. § 2244(d)(1)(A).[1]

On October 25, 2004, the Fifth District Court of Appeals affirmed Petitioner's conviction and sentence.  The conviction became final thirty days later, on November 24, 2004.  *See* Tex. R. App. P. 68.2 (PDR must be filed within 30 days after court of appeals renders judgment or overrules motion for rehearing); *see also Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (state conviction becomes final for limitations purposes when time for seeking further direct review expires, regardless of when mandate issues).  Petitioner then had one year, or until November 24, 2005, to file his federal petition.

The filing of a state application for habeas corpus tolls the statute of limitations.  *See* 28 U.S.C. § 2244 (d)(2).  On November 26, 2007, Petitioner filed a state habeas petition.  This petition was filed after the AEDPA limitations period expired.  It therefore did not toll the

---

[1]The statute provides that the limitations period shall run from the latest of--

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking direct review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

limitations period.

Petitioner was required to file his § 2254 petition by November 24, 2005. He did not file his petition until April 9, 2014. His petition is therefore untimely.

**B.     Actual Innocence**

Petitioner argues he should be excused from the limitations period because he is actually innocent. The Supreme Court has recently held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). A petitioner who claims actual innocence, however, "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* Petitioner has failed to meet this high standard.

On state habeas review in 2005, Petitioner submitted affidavits from the victim and his mother in which the victim recanted his trial testimony. The state court held a hearing on the habeas petition, and the victim testified at the hearing. The state court found as follows:

> At the time of trial [the victim] was eleven years old. (RR-3:29). Applicant was a friend of [the victim's] mother. (RR-3:32). Applicant asked to see [the victim's] computer which was in his bedroom. (RR-3:35). When they got to [the victim's bedroom], Applicant lay down on the bed and asked [the victim] to lie with him. (RR-3:36). [The victim] lay down on his back, but turned over at Applicant's request. (RR-3:37). Applicant began rubbing [the victim's] back. (RR - 3:37). Applicant asked [the victim] to touch his back or stomach and [the victim] complied. (RR - 3:38). [The victim] got off the bed and told Applicant that his mother was home; Applicant returned to the living room. (RR-3:38). Applicant asked [the victim's] mother if he could take [the victim] to show him Applicant's computer. (RR - 3:42). [The victim] went to Applicant's apartment. (RR -3:40). Then, Applicant shut the bedroom blinds and asked [the victim] to lie on the floor; [the victim] complied. (RR - 3:42). Applicant told [the victim] to pull his shorts down; [the victim] did. (RR - 3:42). [The victim] pulled his shorts and underwear down around his ankles. (RR - 3:43). Applicant removed his clothes. (RR - 3:43). [The victim] lay face down like the Applicant asked him. (RR-3:44). Applicant lay

on top of [the victim] and put his "thing" inside [the victim's] butt; it hurt. (RR - 3:44-45). Applicant stopped when [the victim] said his head hurt. (RR - 3:46). Applicant stopped, they both pulled up their clothes and then sat on the sofa. (RR - 3:46-47). Applicant asked [the victim] to come into the bathroom with him but [the victim] refused. (RR -3:47). Applicant took [the victim] to McDonald's before returning him home. (RR-3:47). [The victim] did not tell his mother what had happened because Applicant told him not to. (RR - 3:48). Applicant wrote a confession admitting to lying on top of [the victim] but denying direct contact with [the victim's body] or penetration. (RR -3:125-127; State's Exhibit 1, 3).

[The victim's] interview at the Dallas Children's Advocacy Center (DCAC) was videotaped and it was admitted into evidence at trial. (State's Exhibit 8). [The victim's] statements during his DCAC interview were consistent with his trial testimony.

At the writ hearing, [the victim] testified that he was now eighteen years old. (WR -1:7). [The victim] testified he had doubts about his previous testimony years later, when he learned about sex. (WR- 1:10). [The victim] testified there was no contact between Applicant's penis and [the victim's] anus. (WR - 1:10, 12). [The victim] admitted he went to Applicant's apartment but denied that Applicant pulled down his pants. (WR -1:13-14). [The victim] denied that Applicant lay down on top of him. (WR - 1:13). [The victim] said that Applicant touched him, but he could not remember where. (WR - 1:14). [The victim] testified that his mother had been in contact with Applicant's family and that she sees them approximately two times per month. (WR - 1:16-17). In the affidavit [the victim] signed for Applicant's counsel, [the victim] stated they lay on the bed. (WR - 1:18). That is an incorrect statement. (WR - 1:18).

The Court finds [the victim's] testimony at the writ hearing is not credible. [The victim] provided many more specific facts at the trial and was consistent with his testimony that the Applicant's penis penetrated his butt. Now, six years later, after [the victim] and his family have befriended Applicant's family, he has decided to "recant" his earlier testimony. The Court does not believe [the victim's] recantation.

*Ex parte Martinez* at 41-43.

The record shows the victim testified at trial that although he did not see Petitioner's

penis, he knew Petitioner's penis penetrated his butt because he felt it and it hurt. (Trial Tr. Vol. 3

at 45, 63.) The victim stated he told Petitioner that he had a headache so Petitioner would stop.

(*Id.* at 46.)

At trial, the State also admitted Petitioner's written statement to police. (State's Trial Ex.

3.) In the statement, Petitioner admitted he laid over the victim, but he claimed the victim

instigated the conduct. Petitioner stated he went to the victim's home to visit the victim's mother,

but she was not there. Petitioner went inside the home to wait for the mother and the victim asked

Petition to go into the victim's room. Petitioner stated that while in the victim's bedroom, the

victim "asked me to lay down with him and for me to lay over him and that's what I did, however

clothes were never removed." Petitioner stated that after the victim's mother returned home, he

took the victim to his apartment. While at his apartment, Petitioner stated:

> [The victim] asked me to continue what we had been doing and he pulled down his shorts
> and underwear, I only took off my pants. I didn't want to do that, but [the victim] was
> asking me. I only laid over him, there was never any direct contact with his body nor
> penetration. I asked him why he like it. He only responded: I just like it." I backed away
> from him because I didn't think that was appropriate and [the victim] asked me to take
> him home because he had a severe headache. . . .

(*Id.*). Petitioner also noted that he was HIV positive. (*Id.*)

In 2005, the victim signed an affidavit in which he recanted his trial testimony. The victim

acknowledge his prior trial testimony, but stated: "Now, I realize I was not sexually assaulted.

We lay in bed, but Francisco Martinez did not have sex with me. My testimony was wrong." *Ex*

*parte Martinez*, No. 70,8490-01 at 19.

During the state court hearing on the victim's recantation, the victim testified on direct

examination that Petitioner did not sexually abuse him either by contact or by penetration. (Trial

Tr. Vol. 3 at 9-10.) The victim testified he began having doubts about his trial testimony a few

years after the trial. (*Id.* at 10.) He stated, "Now that I grew up, a couple years, you know, my

church, knew what sex was really about, you know, and I felt in my mind that that wasn't what

happened. . . ." (*Id.*)

On cross-examination, the victim agreed that he and Petitioner went to Petitioner's

apartment.  The victim stated:

| | |
|---|---|
| VICTIM: | Okay, we went to his house, he asked me if I wanted to see the computer that he was going to give me.  And I said sure.  And then that's when I believe we were in his room, you know, and he like started touching me, I didn't feel like right, you know, because of the classes I had had before. |
| PROSECUTOR: | Where did he touch you? |
| VICTIM: | I don't remember, I can't say cause I don't remember. |
| PROSECUTOR: | You remember that he touched you, but you don't remember where? |
| VICTIM: | Right. |
| PROSECUTOR: | And do you remember if he touched your skin or your clothes? |
| VICTIM: | I think it was like clothes and some skin. |
| PROSECUTOR: | Okay.  And what else happened? |
| VICTIM: | And then I can't recall a lot of things about it cause it was such a long time ago. |
| PROSECUTOR: | Right? |
| VICTIM: | I know that there was no penetration involved at all. |
| PROSECUTOR: | There was no penetration.  But you said on Tuesday when we spoke that you remember lying on the floor? |
| VICTIM: | Uh-huh. |
| PROSECUTOR: | Right? |
| VICTIM: | Right. |
| PROSECUTOR: | And you remember that he was on top of you? |
| VICTIM: | Yeah.  But I went home and thought about it and that's what I'm |

saying today, he didn't – I am not sure, I mean I can't say for sure, sure, but I don't think he was ever – if he was fully on top of me or close to me, you know?

PROSECUTOR:  Close enough that you could feel him?

VICTIM:  Yeah.

PROSECUTOR:  But not laying full weight on you?

VICTIM:  No.

PROSECUTION:  But he was over you?

VICTIM:  Not over – it was – as in I was – I think I was on the floor but not – I felt like him behind me, you know, but not like on me.

PROSECUTOR:  How did you feel him behind you?

VICTIM:  As if I was close, he was so close that I could feel.

PROSECUTOR:  So he was touching you?

VICTIM:  Uh-huh.

PROSECUTOR:  And you were on the floor?

VICTIM:  Right.

PROSECUTOR:  And do you remember anything else?

VICTIM:  After that, I asked him to stop, and that's when he stopped and I told him to take me home.

(*Id.* at 13-15.)

The Court finds that the state court's determination that the victim's recantation was not credible is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, Petitioner has failed to show he is actually

innocent. He has therefore failed to overcome the AEDPA's statute of limitations.

## C.    Equitable Tolling

The one-year limitation period is subject to equitable tolling in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999) (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling" (quoting *Davis*, 158 F.3d at 811)). The Fifth Circuit has held that " '[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.' " *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir.1996)). Petitioner bears the burden of proof to show he is entitled to equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

In this case, Petitioner has made no argument that he was misled by the state or prevented in some extraordinary way from asserting his rights. Further, he has failed to show that he diligently pursued his habeas remedies. After his state habeas petition was denied on November 19, 2008, he waited over five years to file his federal petition. *See Coleman,* 184 F.3d at 402 (stating that for equitable tolling to apply, the applicant must diligently pursue habeas corpus relief). Petitioner has failed to show he is entitled to equitable tolling.

**RECOMMENDATION**:

The Court recommends that the petition for a writ of habeas corpus be dismissed with

prejudice as barred by the one-year limitation period. *See* 28 U.S.C. §2244(d).

Signed this 14 day of April, 2015.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner

provided by law.  Any party who objects to any part of this report and recommendation must file

specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's report and recommendation where the disputed

determination is found.  An objection that merely incorporates by reference or refers to the

briefing before the magistrate judge is not specific.  Failure to file specific written objections will

bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate

judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See*

*Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).